UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

BILLY BEASLEY,

Plaintiff,

v.

UNITED STATES OF AMERICA; UNITED STATES FOREST SERVICE, agency of UNITED STATES DEPARTMENT OF AGRICULTURE,

Defendants.

NO. **CV-12-3136-LRS**

**ORDER GRANTING MOTION TO DISMISS**

**BEFORE THE COURT** are the Motion To Dismiss and/or For Summary Judgment filed by the United States Defendants (ECF No. 4), the Plaintiff's Motion For Summary Judgment (ECF No. 8), and the Motion For Leave To File *Amicus Curiae* Brief (ECF No. 15) filed by Washington State Snowmobile Association. These motions are heard without oral argument.

**BACKGROUND**

Plaintiff and his wife own the real property and residence located at 351 Lost Lake Road in Easton, Kittitas County, Washington. They purchased this property on October 20, 1999.

On or about May 14, 1963, Plaintiff's predecessor in interest, M.C. Miller

Lumber Company, entered into a “Right of Way Deed” with the United States of America (hereinafter the “Easement”). The Easement was recorded on May 22, 1963, with the Kittitas County Auditor under record number 304689. Plaintiff is the successor in interest to the “Grantor” (M.C. Miller Lumber Company) of the Easement.

The Easement permitted the United States as the “Grantee” to construct and maintain a road (Forest Service Road 5480 or the Lost Lake Road) across Plaintiff’s property (“Grantor . . . does hereby grant unto the Grantee and its assigns an easement and right-of-way for a road to be located, constructed, reconstructed, improved, used, operated, patrolled and maintained, and known as the Lost Lake Road . . . .”).

The Easement reserves to the “Grantor, its successors and assigns . . . to the extent permitted by Federal law and regulations . . . the right to use, maintain, patrol and reconstruct said road in such manner as not unreasonably to interfere with the use of said road by the Grantee or its authorized users or cause substatial (sic) injury thereto . . . .”

Lost Lake Road (also known as Forest Service Road (FSR) 5480) is an arterial road that the U.S. Forest Service operates as a component of the Okanogan and Wenatchee National Forest transportation system under regulations in 36 Code of Federal Regulations 212- Travel Management.

The Easement provides that “[t]he rights[,] privileges and authorities herein granted are for the use and enjoyment by the Grantee [United States] for any and all pruposes (sic) deemed necessary and desirable in connection with the control, management and administration of the National Forest, or the resources thereof, and insofar as compatible therewith, use by the general public and the rights[,] privileges and authorities herein granted shall continue as long as used for the purposes granted . . . .”

Lost Lake Road is closed to motorized vehicular travel during the winter months and is open to recreational uses such as dog-sledding, cross-country skiing, snow shoeing and snowmobiling. The winter road closure and other restrictions on Lost Lake Road were put in place by the National Forest Systems Roads and Trails Order No. 706 which went into effect on January 21, 2010, and was signed by Rebecca Heath, Forest Supervisor, Okanogan-Wenatchee National Forest.

The Forest Service, in partnership with Washington State Parks, has operated, maintained, and managed the FSR 5480 Road as a component of a winter recreation trail since 1984. Crystal Springs Sno-Park, located about three miles east of Plaintiff's property, is the largest snow park operated by Washington State Parks. FSR 5480 is one of the main snow groomed routes leading away from the park. FSR 5480 has had a winter closure order restricting wheeled vehicles since 1987 in order to provide winter recreationists safe use of the road and area. The current order is No. 706.

Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. §2201 allowing him "to maintain Lost Lake Road in any manner which does not unreasonably interfere with the Government's use of the road, without further administrative review or authorization."

**DISCUSSION**

**A. SCOPE OF QUIET TITLE ACT (QTA)**

The Quiet Title Act (QTA), 28 U.S.C. §2409a, provides "the exclusive means by which adverse claimants [can] challenge the United States' title to real property." *Lesnoi, Inc. v. U.S.*, 170 F.3d 1188, 1191 (9th Cir. 1999). Two conditions must exist before a district court can exercise jurisdiction over an action under the QTA: (1) the United States must claim an interest in the

property at issue, and (2) there must be a disputed title to real property. 28 U.S.C. §2409a(a, d).

In *Robinson v. United States*, 586 F.3d 683, 686 (9th Cir. 2009), the Ninth Circuit noted it "has repeatedly held that both disputes over the right to an easement **and suits seeking a declaration as to the scope of an easement** fall within the purview of the QTA." (Emphasis added). Among the previous decisions cited by it were *Michel v. United States*, 65 F.3d 130, 131-33 (9th Cir. 1995) (per curiam) (dispute regarding the scope of easement over national wildlife refuge) and *Narramore v. United States*, 852 F.2d 485, 490-92 (9th Cir. 1988)(dispute over whether flooding exceeded the scope of an easement). In *Robinson*, the circuit acknowledged plaintiffs were not seeking a declaration either establishing their right to the easement or determining its scope, but were seeking relief in tort. Nevertheless, the circuit observed that although the plaintiffs were not seeking a declaration of title as a remedy, "resolution of their tort claims may require the court to consider the terms of the easement," *Id*., therefore, suggesting such consideration could potentially bring plaintiffs' claim within the purview of the QTA. The circuit further noted that the legislative history of the QTA "indicates that Congress did not intend to limit the waiver solely to the traditional 'quiet title' cause of action; instead Congress was more generally concerned with interests that 'cloud title,' i.e., interests that raise questions that may *affect* the claim of title and pose problems in the future." *Id*. at 687(*italicized* emphasis in original). The circuit concluded it should "adopt a pragmatic approach" and "that a suit that actually challenges the federal government's title, **however denominated**, falls within the scope of the QTA regardless of the remedy sought." *Id*. (Emphasis added). The circuit reasoned that "[t]o hold otherwise would merely allow parties to avoid the limitations of the QTA by raising contract or tort claims." *Id*. "At the same time," however,

the circuit held "a suit that does not challenge title but instead concerns the use of land as to which title is not disputed can sound in tort or contract and not come within the scope of the QTA." *Id*.

Turning to the facts of the case, the circuit concluded the effect of the suit as pleaded was not to challenge the federal government's title:

> There is no dispute that the trust property was subject to a sixty-foot easement for specified purposes. . . . Although the Government suggests, vaguely, that it does dispute the easement, a close reading of its brief indicates it maintains only that the Indians' use of the land has not interfered with the easement, but does not disagree with the Robinsons about the land area or the intended use of the easement. The litigation therefore should not result in any adjudication of title to the easement claimed by the Robinsons, and the Robinsons' suit properly sounds in tort as alleged.

*Id*. at 688.

Here, Plaintiff's complaint alleges this court has subject matter jurisdiction over his action for declaratory relief pursuant to 28 U.S.C. §2201 "because this action is based upon a contract between Beasley and the Government," citing 28 U.S.C. §1346(a)(2) (United States as defendant). This is a contract claim and the court must be mindful to not allow parties to avoid the limitations of the QTA by raising contract claims in an action that "actually challenges the federal government's title, however denominated, . . . regardless of the remedy sought." Plaintiff's action challenges the title of the United States to its Easement and seeks a declaration as to the scope of that Easement in relation to the rights reserved by the Grantor in granting the Easement. The Plaintiff maintains not merely that the use of his land by the United States has interfered with his rights as reserved in the Easement, but that said use is beyond

the scope of the "intended use of the easement." Accordingly, this action is distinguishable from the action in *Robinson*.

Recently, in *City of North Las Vegas v. Clark County, Nev.*, 2011 WL 3472481 at *6 (D. Nev. 2011), the district court, citing *Robinson*, noted that "[a] dispute over the existence or scope of an easement will satisfy the requirement that there be a dispute over title to real property." The district court concluded the two conditions required to exercise jurisdiction over an action under the QTA were satisfied (the United States must claim an interest in the property at issue, and there must be a disputed title to real property). First, the United States claimed to own the property at Nellis Air Force Base pursuant to which it granted an easement to Clark County and entered into an EUL (Enhanced Use Leasing Lease Agreement) with the City of North Las Vegas. Secondly, the City claimed the EUL granted it an easement to discharge effluent into the Range Wash, but the United States contended the EUL did not grant an easement at all, but if it did, it did not grant an easement to discharge effluent. Accordingly, there was a dispute between the City and the United States "over the existence and scope of [the] City's claimed easement" and "[t]he United States' position that no easement exists, or if one does, it does not have the scope the City claims, casts a cloud upon [the] City's claimed title to an easement to discharge effluent into the Range Wash on Nellis Air Force Base." *Id*.

Authority from the Sixth Circuit reveals that Ninth Circuit authority compels the conclusion that the dispute between Plaintiff Beasley and the United States falls within the purview of the QTA. In *Sherwood v. Tennessee Valley Authority*, _____ F.Supp.2d _____, 2013 WL 656795 (E.D. Tenn. 2013), the district court denied a motion to dismiss for lack of subject matter jurisdiction under the QTA where it found the parties' dispute was "about the scope of the

easements in questions; it is not about the validity of the easements nor is it a dispute about who owns the land." The *Sherwood* court relied on a decision by "a sister district court" within the Sixth Circuit, *Fuqua v. United States*, 2010 WL 1883468 (W.D. Ky. 2010), which had relied on a directive in *Saylor v. United States*, 315 F.3d 664, 670 (6th Cir. 2003), that the plain language of the QTA "clearly limits its scope to adjudications in which the title or ownership of real property is in doubt." In a footnote, the *Sherwood* court acknowledged it was relying on Sixth Circuit precedent, but was mindful of case law from outside the Sixth Circuit, including *Robinson*, *City of North Las Vegas*, and *Kootenai Canyon Ranch, Inc. v. United States Forest Service*, 338 F.Supp.2d 1129, 1133 (D. Mont. 2004), "which suggests a different result." It determined this case law directly conflicts with the Sixth Circuit's statement in *Saylor* that there is "no reason to engage in an examination of the [QTA's] legislative history or policy preferences when the plain text . . . clearly limits its scope to adjudications in which the title or ownership of real property is in doubt." *Sherwood*, 2013 WL 656795 at *4 n. 7., quoting *Saylor*, 315 F.3d at 670.

Under Ninth Circuit precedent, this court concludes that because the United States claims an interest in the real property at issue through the Easement, and because there is a dispute as to the scope of that Easement, the exclusive basis for subject matter jurisdiction is the QTA. See *Kootenai Canyon Ranch*, 338 F.Supp.2d at 1133 ("the government has an easement in land for which the Plaintiff owns the servient estate, and the parties dispute the scope of that easement").[1]

---

[1] Although the court could dismiss Plaintiff's complaint for failure to plead a cause of action under the QTA, this deficiency would be easily remedied by the filing of an amended complaint. The court would be obliged to dismiss the

**B. STATUTE OF LIMITATIONS**

While the QTA waives the sovereign immunity of the United States in a civil action "to adjudicate title to real property in which the United States claims an interest," any such action must be brought within the applicable limitations period. 28 U.S.C. §2409a(a). A civil action to quiet title is "barred unless it is commenced within twelve years of the date upon which it accrued." 28 U.S.C. §2409a(g). Any "[s]uch action shall be deemed to have accrued on the date the plaintiff or his predecessor-in-interest knew or should have known of the claim of the United States." *Id.*

Plaintiff's Complaint was filed on November 21, 2012. The United States alleges Plaintiff had constructive knowledge well before November 21, 2000, that the United States was claiming an interest adverse to Plaintiff's property rights and therefore, a QTA claim asserted by him would be time-barred.. According to the United States, when Plaintiff purchased the property in 1999, knowledge of the Easement was imputed to him because the Easement was recorded in 1963 with the office of the Kittitas County Auditor.

Plaintiff contends the 12 year limitations period did not commence in November 2000, but rather in 2011. He says that is when he first became aware the United States would interpret the Easement to prohibit him from plowing snow on Lost Lake Road after he was cited by the Forest Service for engaging in that activity on nearby Forest Service Road 5400. (PO-11-4004-JPH). Plaintiff contends a claim under the QTA is timely because the adverse interest of the

---

current complaint without prejudice and provide Plaintiff with an opportunity to file an amended complaint. Rather than proceeding in that fashion, the court will treat the complaint as pleading a cause of action under the QTA and consider whether Plaintiff has complied with the QTA's statute of limitations.

United States does not arise from the mere existence of the Easement, but rather from its interpretation of the Easement.

As in the *Kootenai Canyon Ranch* case, cited *supra*, the question is "whether and when the Plaintiff or [his] predecessors in interest knew or should have known of the claim of the United States." 338 F.Supp. 2d at 1133. The test is one of reasonableness and "whether the United States' actions would have alerted a reasonable landowner that the government claimed an interest in the land." *Id.*, citing *California v. Yuba Goldfields, Inc.*, 752 F.2d 393, 396 (9th Cir. 1985), and quoting *Shultz v. Department of Army, U.S.*, 886 F.2d 1157, 1160 (9th Cir. 1989). As in *Kootenai Canyon Ranch*, the issue here "is not the government's mere claiming of an interest, but the scope of the interest claimed." *Id.*

The Easement provides the United States with the right to construct and maintain a road (Forest Service Road 5480 or the Lost Lake Road) across Plaintiff's property, and that right encompasses "any and all [purposes] deemed necessary and desirable in connection with the control, management and administration of the National Forest, or the resources thereof, and insofar as compatible therewith, use by the general public." Moreover, although the Easement reserves to the Plaintiff "the right to use, maintain, patrol and reconstruct said road," it must "not unreasonably . . . interfere with the use of [the] road by the [United States] or its authorized users or cause [substantial] injury thereto . . . ." This court concludes the expansive language of the Easement, considered as a whole, is sufficient to alert a reasonable landowner that the United States might assert a right to close the road to vehicular traffic during winter months and, consistent therewith, prohibit the plowing of the road, in order to allow its use by winter recreationists who are members of the

"general public" and whose use is "authorized" by the Forest Service.

Even if the language of the Easement by itself not sufficient to alert a reasonable landowner that the United States might assert a right to close the road to vehicular traffic during winter months and prohibit plowing of the same, it is undisputed that the Forest Service, in partnership with Washington State Parks, has operated, maintained and managed the road as a component of a winter recreation trail since 1984, and the road has been subject to a winter closure order restricting wheeled vehicles since 1987.[2] This would certainly have alerted a reasonable landowner that the United States was claiming the Easement allowed it to close the road to vehicular traffic and, consistent

///

///

///

therewith, prohibit plowing of the road.[3] Indeed, this would have provided a

---

[2] See Declaration of Judy Hallisey (ECF No. 5-1 at Paragraph 3). On a motion to dismiss for lack of subject matter jurisdiction, the court is not restricted to the face of the pleadings, but may consider declarations or other evidence without converting the motion into one for summary judgment. *Savage v. Glendale Union High School*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).

[3] Plaintiff acknowledges that winter closure of the road to vehicular traffic and the prohibition on its plowing are related. He asserts that "[i]n the absence of plowing, Lost Lake Road is not available for ingress and egress on Mr. Beasley's property by vehicle for months." (ECF No. 20 at p. 8).

landowner with actual notice of the claim of the United States regarding the scope of the Easement, and in particular, an Easement over land held in fee by the landowner (Plaintiff Beasley). See *Michels*, 65 F.3d at 132, citing *Yuba Goldfields*, 752 F.2d at 394-97("If a claimant asserts fee title to disputed property, notice of a government claim that creates even a cloud on that title may be sufficient to trigger the limitations period").

In 1963, when the Easement was recorded, Plaintiff's predecessor in interest (M.C. Miller Lumber Company) knew or should have known, based on the expansive language in the Easement, that the United States would claim the Easement allowed it to close the road to vehicular traffic during the winter for recreational purposes and, to that end, prohibit any plowing of the road. In 1999, when Plaintiff purchased the property, he knew or should have known the same considering the expansive language in the Easement, as well as the winter closures of the road which had already occurred and would continue to occur thereafter.[4] Accordingly, a claim asserted by Plaintiff under the QTA on November 21, 2012, is time-barred because he or his predecessor in interest knew or should have known prior to November 21, 2000, of the claim of the United States that the scope of the easement encompassed winter closure of the road for recreational purposes and, related thereto, prohibition of plowing of the road. Any claim asserted under the QTA accrued before November 21, 2000.

---

[4] The record indicates Plaintiff obtained a special use permit from the Forest Service in 2002 in order to plow snow on FSR 5480. (Second Declaration Of Judy Hallisey, ECF No. 19-1 at Paragraph 2, and Ex. 2 appended thereto). The record indicates the only occasion thereafter on which Plaintiff plowed snow on FSR 5480 was on April 1, 2012, which led to his being cited for a supervised release violation in PO-11-4004-JPH, and thereafter, to this civil lawsuit.

**CONCLUSION**

The QTA is the exclusive means for the Plaintiff to challenge the scope of the Easement claimed by the United States. QTA's 12 year limitations period has been described as a "central condition of the consent [to be sued] given by the [Quiet Title] Act." *United States v. Mottaz*, 476 U.S. 834, 843, 106 S.Ct. 2224 (1986). The limitations period is jurisdictional. *Park County, Mont. v. United States*, 626 F.2d 718, 720 (9th Cir. 1980). "When waiver legislation contains a statute of limitations provision, the limitations provision constitutes a condition on the waiver of sovereign immunity." *Block v. North Dakota*, 461 U.S. 273 , 287, 103 S.Ct. 1811 (1983). A QTA claim asserted by Plaintiff would be time-barred and therefore, the court does not have subject matter jurisdiction to consider such a claim.

Defendants' Motion To Dismiss For Lack Of Subject Matter Jurisdiction (ECF No. 4) is **GRANTED** and the captioned action is **DISMISSED with prejudice**. Plaintiff's Motion For Summary Judgment (ECF No. 4) and the Motion For Leave To File *Amicus Curiae* Brief (ECF No. 15) filed by Washington State Snowmobile Association are **DISMISSED** as moot.

///

///

**IT IS SO ORDERED.** The District Court Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel of record.

**DATED** this __1st__ day of May, 2013.

***s/Lonny R. Suko***

LONNY R. SUKO
United States District Judge